**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| CARPENTERS PENSION FUND OF ILLINOIS; IRON WORKERS LOCAL 11 PENSION FUND; PEORIA POLICE PENSION FUND; LAURA WOOD; and HARKISHAN PAREKH, Derivatively on Behalf of CENTENE CORPORATION, | ) ) ) ) ) ) ) | Consolidated Case No. 4:18-cv-00113-CDP <br><br> **Oral Argument Requested** |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| MICHAEL F. NEIDORFF, JEFFREY A. SCHWANEKE, ROBERT K. DITMORE, DAVID L. STEWARD, JOHN R. ROBERTS, TOMMY G. THOMPSON, FREDERICK H. EPPINGER, RICHARD A. GEPHARDT, ORLANDO AYALA, VICKI B. ESCARRA, PAMELA A. JOSEPH, K. RONE BALDWIN, and CAROL E. GOLDMAN, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| -and- | ) ) | |
| CENTENE CORPORATION, a Delaware corporation, | ) ) ) | |
| Nominal Defendant. | ) ) | |

**NOMINAL DEFENDANT CENTENE CORPORATION'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO STAY**

# TABLE OF CONTENTS

<u>Page</u>

I.     PRELIMINARY STATEMENT ........................................................................1

II.    BACKGROUND ...........................................................................................4

III.   ARGUMENT .................................................................................................7

        A.      A Stay Is Necessary To Avoid Prejudice To Centene ................................7

        B.      A Stay Is Necessary To Avoid Duplicative Litigation, Wasting Judicial Resources And Inconsistent Rulings .............................................10

                 1.      The Parties, Issues And Key Allegations Are The Same In Both Suits..........................................................................................11

                 2.      Plaintiffs' Claims Are Largely Contingent On The Outcome Of The Securities Action................................................12

                 3.      A Stay Would Prevent Inconsistent Rulings..................................14

        C.      Plaintiffs Will Not Suffer Prejudice From A Stay ....................................15

IV.   CONCLUSION.............................................................................................15

# TABLE OF AUTHORITIES

Page

## CASES

Breault v. Folino,
    No. SACV010826GLTANX,
    2002 WL 31974381 (C.D. Cal. Mar. 15, 2002).........................................................2, 3, 7

Brenner v. Albrecht,
    C.A. No. 6514–VCP, 2012 WL 252286 (Del. Ch. Jan. 27, 2012)...........................9, 10, 14

Brudno v. Wise,
    No. Civ.A. 19953, 2003 WL 1874750 (Del. Ch. Apr. 1, 2003) .....................10, 12, 13, 14

Cohen v. Beneficial Industrial Loan Corp.,
    337 U.S. 541 (1949)...........................................................................................................2, 15

Cucci v. Edwards,
    No. SACV 07-532 PSG (MLGx),
    2007 WL 3396234 (C.D. Cal. Oct. 31, 2007)..........................................................8, 10, 12

In re E.F. Hutton Banking Practices Litigation,
    634 F. Supp. 265 (S.D.N.Y. 1986) .......................................................................................9

In re First Solar Derivative Litigation,
    No. CV–12–00769–PHX–DGC,
    2012 WL 6570914 (D. Ariz. Dec. 17, 2012) .........................................................2, 8, 13

In re Groupon Derivative Litigation,
    882 F. Supp. 2d 1043 (N.D. Ill. 2012) .......................................................8, 11, 12, 13, 14

Guttman v. Huang,
    823 A.2d 492 (Del. Ch. 2003)............................................................................................14

Janklow ex rel. Stericycle, Inc. v. Alutto,
    Civ. A. No. 18-457-CFC, 2018 WL 6499869 (D. Del. Dec. 11, 2018)............................11

Landis v. North American Co.,
    299 U.S. 248 (1936)..............................................................................................................7

Liberty Mutual Insurance Co. v. Wright Construction Services, Inc.,
    No. 4:18 CV 203 CDP, 2018 WL 4095186 (E.D. Mo. Aug. 28, 2018).........................4, 14

McDonald ex rel. RPM International, Inc. v. Abizaid,
    No. 1:17CV907, 2018 WL 692006 (N.D. Ohio Feb. 2, 2018) ................................3, 10, 14

<u>Miller v. Bayer HealthCare Pharmaceuticals Inc.</u>,
    No. 4:15CV1401 CDP, 2015 WL 5572801 (E.D. Mo. Sept. 22, 2015) .....................10, 15

<u>Nabholz Construction Corp. v. Beck</u>,
    699 F. Supp. 2d 1101 (E.D. Mo. 2010)................................................................................14

<u>In re Oracle Corp.</u>,
    867 A.2d 904 (Del. Ch. 2004), <u>aff'd</u>, 872 A.2d 960 (Del. 2005) ..................................4, 14

<u>In re Ormat Technologies, Inc. Derivative Litigation</u>,
    No. 3:10–cv–00177–ECR–RAM,
    2011 WL 3841089 (D. Nev. Aug. 29, 2011) ................................................................7, 11

<u>Rosenblum ex rel. Amgen, Inc. v. Sharer</u>,
    No. CV 07–6140 PSG (PLAx),
    2008 WL 9396534 (C.D. Cal. July 28, 2008) .....................................................................8

<u>Simmons v. GlaxoSmithKline, LLC</u>,
    No. 4:15CV1397 CDP, 2015 WL 6063926 (E.D. Mo. Oct. 14, 2015)..............................7

<u>In re STEC, Inc. Derivative Litigation</u>,
    Nos. CV 10–00667–JVS (MLGx), SACV 10–00220–JVS(MLGx),
    2012 WL 8978155 (C.D. Cal. Jan. 11, 2012) ............................................................ *passim*

# I.     PRELIMINARY STATEMENT

Nominal Defendant Centene Corporation ("Centene" or the "Company") moves this Court for a stay of this derivative lawsuit (this "Derivative Action" or this "Action") pending resolution of Sanchez v. Centene Corp., et al., No. 4:17-cv-00806-AGF (the "Securities Action" and, together with this Derivative Action, the "Actions"), a substantially similar consolidated securities class action assigned to the Honorable Audrey G. Fleissig of this District.

In November 2016, purported Centene shareholders filed the Securities Action against the Company and certain officers, alleging that the defendants made false and misleading statements regarding the extent of liabilities that Centene inherited in a March 2016 merger with Health Net, Inc. ("Health Net"). (See Ex. A ¶ 1, 81–110.)[1] The Securities Action alleges that Centene's management purportedly knew that the Company was inheriting major potential liabilities from Health Net, but concealed those liabilities from the market in violation of federal securities law. (Id. ¶¶ 66–80.) Over a year later, another set of purported Centene shareholders brought this follow-on Derivative Action. Piggybacking on the Securities Action, Plaintiffs borrow almost all of the allegations in the Securities Action and simply recraft those allegations into alleged breaches of fiduciary duties. (See Compl. ¶¶ 101–14, 125–69, 207–15.) In fact, several allegations are copied almost verbatim from the Securities Action.[2]

Yet, there is a significant key difference between the Actions: The Securities Action is brought *against* Centene purely as a defendant. This Action, on the other hand, is a derivative action, which is asserted ***on behalf of*** Centene, as if Plaintiff shareholders are stepping into the shoes of the Company as a plaintiff. Because Plaintiffs here seek to assert an action ***on behalf of***

---

[1] All exhibits referenced are attached to the accompanying Declaration of Christopher A. Smith ("Smith Decl."). Unless otherwise noted, all citations have been omitted and all emphases have been added.

[2] (Compare Ex. A ¶¶ 19–21, 36, 38, 40–41, 43, 49, 52, 54, 68; with Compl. ¶¶ 44–46, 73, 75, 77–78, 85, 101, 106, 108, 131.)

the Company, Plaintiffs are acting as Centene's fiduciaries and must ensure that this Derivative Action is litigated in a manner consistent with the Company's best interests. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 549 (1949); In re STEC, Inc. Derivative Litig., 2012 WL 8978155, at *4 (C.D. Cal. Jan. 11, 2012) (as fiduciaries, derivative plaintiffs "may proceed . . . only if and when it is in [company's] best interest").

Court after court, however, has held that litigating a derivative action at the same time as a related securities action does ***not serve*** the company's best interests. Rather, simultaneously litigating the Derivative Action actively ***harms*** the Company by directly undermining and endangering its defense in the Securities Action. When securities and derivative actions overlap in allegations and issues, as is the case here, the plaintiffs' efforts to prove their claims on behalf of the company in the derivative suit may simultaneously undermine the company's defenses in the securities suit. Thus, Plaintiffs' insistence on pursing this Derivative Action now—contrary to the Company's wishes—threatens to injure the very entity this Action purportedly exists to benefit, in violation of Plaintiffs' fiduciary duties. Courts find this impermissible, and stay derivative actions to resolve the conflict. See Breault v. Folino, 2002 WL 31974381, at *2 (C.D. Cal. Mar. 15, 2002) (staying derivative case where "[p]rosecution of this [derivative] action will conflict with [the company's] defense of the pending class actions" and "[the company] would be harmed by [p]laintiffs' pursuit of this derivative action now because  its defense in the pending class actions also would be challenged in this suit"); In re First Solar Derivative Litig., 2012 WL 6570914, at *2 (D. Ariz. Dec. 17, 2012) (litigating derivative suit "not in the best interests of the corporation because . . . the derivative suit will require [the company] to allege wrongdoing on the part of its officers and directors while maintaining the[ir] innocence . . . in the [securities action]").

The consequences of this conflict for Centene are definite and substantial. For example,

any witness that testifies "on behalf" of the Company in this Derivative Action may be, in effect, testifying against the Company in the Securities Action. Plaintiffs' depositions in this Derivative Action may thus be used by the securities plaintiffs to build their case against the Company— turning this Action's ostensible purpose to benefit the Company on its head. STEC, 2012 WL 8978155, at *6 n.6 (staying derivative suit because "evidence could surface in depositions . . . which could also be used to undermine [the company's] defense in the Federal Securities Class Action"). Further, litigating this Derivative Action now threatens to harm Centene by diverting its "financial and management resources from the pending litigation[] against it." Breault, 2002 WL 31974381, at *2. Because the Individual Defendants in this Action are Centene's key decision-makers, Centene's interests are best served by a stay, so that its management can focus on defending the Securities Action, rather than fighting battles on multiple fronts.

It is for precisely these reasons that "[c]ourts generally stay a shareholder derivative suit until the culmination of a securities class action when the cases arise from the same factual allegations and the evidence in the former could jeopardize the company's defense in the latter." STEC, 2012 WL 8978155, at *4. Indeed, a stay is so clearly in the best interests of the company that derivative plaintiffs, who are acting on behalf of the company, routinely *stipulate* to staying the derivative suit. (See Smith Decl. ¶¶ 10–11; Exs. C–F.) Plaintiffs refused to do so here, thus the Court should enter a stay and prevent Plaintiffs from using this Derivative Action— Centene's own alleged asset—to harm the Company.

A stay is also necessary to preserve judicial efficiency and comity. Again, the Actions contain substantially similar issues and parties, and will rely on largely the same documents and witnesses. Courts in this exact scenario routinely stay the derivative action, because "duplicative litigation will be a waste of judicial and litigation resources." McDonald ex rel. RPM Int'l, Inc.

v. Abizaid, 2018 WL 692006, at *2 (N.D. Ohio Feb. 2, 2018). The potential for waste is elevated here because much of the relief this Derivative Action seeks is contingent on the Securities Action's outcome—Plaintiffs seek indemnity from the Individual Defendants for any liabilities Centene may incur in the Securities Action—and thus this Action cannot even be fully adjudicated until the Securities Action has concluded. Id. at *2 (stay promotes judicial efficiency where "outcome of the [securities action] will inform the advisability of the derivative action"). If the Court dismisses the Securities Action—a motion to dismiss has been fully pending—the dispute in this Derivative Action will be substantially narrowed, if not fully resolved.

Simultaneous litigation also creates a real possibility of conflicting judicial rulings and jury findings. For instance, the *Brophy* insider trading claims Plaintiffs bring in this Action have many of the same elements of a securities fraud claim. In re Oracle Corp., 867 A.2d 904, 934 (Del. Ch. 2004). Because the two Actions concern largely the same alleged omissions about Health Net's liabilities, Judge Fleissig and this Court could make contrary rulings in dispositive motions concerning the same allegations and legal questions—with Centene caught in the middle of the conflict. As this Court has recognized, staying duplicative lawsuits avoids this possibility, thereby promoting comity and benefitting the court system. See Liberty Mut. Ins. Co. v. Wright Constr. Servs., Inc., 2018 WL 4095186, at *4 (E.D. Mo. Aug. 28, 2018) (Perry, J.).

For these reasons, and those discussed below, Centene respectfully requests that the Court stay this Derivative Action pending resolution of the Securities Action.

## II.   BACKGROUND

Centene is a multi-lined managed care company incorporated in Delaware and headquartered in Missouri. (Compl. ¶ 25.) On March 24, 2016, Centene merged with Health Net, a publicly traded health insurance company. (Id. ¶ 5.) Purported Centene shareholders filed the

Securities Action a few months after the merger. Over a year later, other shareholders filed this Derivative Action. This Derivative Action and the Securities Action undeniably arise out of the same subject matter, allege similar facts, and contain overlapping legal issues and parties.

**The Securities Action.** On November 15, 2016, a purported Centene shareholder brought a class action lawsuit in the Central District of California against the Company, its CEO Michael Neidorff and its CFO Jeffrey Schwaneke. (Smith Decl. ¶ 4.) Mr. Neidorff and Mr. Schwaneke are also Defendants in the Derivative Action. On March 1, 2017, the Central District of California transferred the case to this District in front of the Honorable Audrey G. Fleissig. (Id. ¶ 5.) Plaintiffs filed a consolidated complaint on July 17, 2017. (See Ex. A.)

The Securities Action asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 premised on the defendants' alleged failure to adequately disclose certain liabilities acquired in the Health Net merger in several post-merger public statements and SEC filings between April and July of 2016. (Id.) Specifically, the Securities Action alleges that Centene: (i) under-reported the medical claims liabilities it assumed in the Health Net merger in the Company's April 26, 2016 SEC Form 10-Q; (ii) failed to disclose concerns about Health Net's insurance products in an investor conference call held on April 26, 2016; and (iii) made false or misleading statements concerning the adequacy of Centene's medical claims reserves at both the May 24, 2016 UBS Global Healthcare Conference and Centene's June 17, 2016 Investor Day presentation. (Id. ¶¶ 81–110.) The Securities Action alleges that the supposed falsity of these statements was revealed in Centene's July 26, 2016 Form 10-Q and 8-K reports, which revised upward the April 26 estimate of medical claims liabilities assumed in the Health Net merger and recorded a $300 million premium deficiency reserve ("PDR") for anticipated future losses associated with design issues in certain Health Net products. (Id. ¶¶ 66–80.)

On September 15, 2017, the defendants moved to dismiss the Securities Action for failure to state a claim. (Smith Decl. ¶ 7.) Judge Fleissig took the motion under submission on February 22, 2018. (Id.) The motion to dismiss remains *sub judice*.

**This Derivative Action.** Beginning in January 2018—over a year after the Securities Action was first filed—Plaintiffs began filing separate follow-on shareholder derivative suits in this District seeking to capitalize on the same core allegations at issue in the Securities Action. The Court consolidated these cases into this Action by Orders dated December 7, 2018 and January 9, 2019. (Dkt. 28, 34.) Plaintiffs filed the Verified Consolidated Amended Stockholder Derivative Complaint (the "Complaint") on February 5, 2019.

Just like the Securities Action, the Complaint alleges that Centene's directors and officers breached their fiduciary duties by making false or misleading statements concerning the liabilities assumed in the Health Net merger, including in the Company's April 26, 2016 10-Q and investor call, at the May 24, 2016 UBS Global Healthcare Conference, and in the June 17, 2016 Investor Day presentation—***the exact same statements*** at issue in the Securities Action. (Compare Compl. ¶¶ 101–14, 207–15; with Ex. A ¶¶ 81–110.) And just like the Securities Action, the Complaint alleges that the truth of these misstatements were disclosed on July 26, 2016 when Centene revised its liabilities estimates by $90 million and recorded the $300 million PDR. (Compl. ¶¶ 125–40.) In fact, the Complaint seeks indemnity for any liabilities Centene may incur in the Securities Action. (Id. ¶¶ 212–15.) The Complaint also alleges that Defendants violated their fiduciary duties by entering into the merger without disclosing or considering potential liabilities Centene may face from various lawsuits against Health Net concerning alleged unpaid insurance claims, unpaid taxes and false Medicare claims. (Id. ¶¶ 3–4.)

6

### III.    ARGUMENT

Federal district courts possess the inherent power to stay lawsuits in the pursuit of fairness. See Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). Courts consider three factors in deciding whether to grant a stay: "(1) potential prejudice to the nonmoving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation[.]" Simmons v. GlaxoSmithKline, LLC, 2015 WL 6063926, at *1 (E.D. Mo. Oct. 14, 2015) (Perry, J.).

Here, these factors favor staying this Action until the Securities Action has concluded.

### A.    A Stay Is Necessary To Avoid Prejudice To Centene

When deciding whether to stay a derivative lawsuit, courts are cognizant that "by virtue of bringing [a] derivative action," the plaintiff becomes the company's "fiduciary and has a duty to act in the company's best interest." STEC, 2012 WL 8978155, at *4. "It follows that Plaintiff[s] may proceed with this [A]ction only if and when it is in [Centene's] best interest." Id. Accordingly, "[t]he concerns of hardship and equity to the moving party are especially relevant in shareholder derivative cases when a securities class action suit is proceeding on the same issues." In re Ormat Techs., Inc. Derivative Litig., 2011 WL 3841089, at *4 (D. Nev. Aug. 29, 2011). This is because this scenario places a corporation in a vulnerable position; to prevail in the derivative suit, the plaintiffs must undermine the corporation's defenses in the securities suit, even though the derivative suit is brought on the corporation's behalf. See id. ("[F]or Plaintiffs to succeed, [they] will need to undermine the credibility of [the company's] witnesses and defense in the Securities Class Action."); Breault, 2002 WL 31974381, at *2 ("Defendants are likely witnesses who Emulex will rely upon in the pending [securities] cases against it. Plaintiffs will need to undermine Defendants' credibility to pursue this [derivative] action.").

In order to avoid this misuse of derivative actions, courts consistently hold that the better course is to stay the derivative action "until the culmination of [the] securities class action." STEC, 2012 WL 8978155, at *4 (collecting cases staying derivative suit); In re Groupon Derivative Litig., 882 F. Supp. 2d 1043, 1052 (N.D. Ill. 2012) ("[P]roceeding with the derivative action while the class action is pending may prejudice Groupon's defense to the securities claims."); First Solar, 2012 WL 6570914, at *2. Indeed, the rationale and authority supporting a stay are so clear and established that many plaintiffs, unlike the Plaintiffs here, simply stipulate to staying the derivative suit. (Exs. C–F.)

Here, Centene may be unfairly prejudiced if forced to litigate this Derivative Action while defending the Securities Action. Centene has forcefully maintained in the Securities Action that its directors and officers did not make any material misstatements or omissions in connection with the liabilities Centene assumed from Health Net in the merger. But **_the entire point_** of this Derivative Action is to prove **_the opposite_**—that Centene's officers and directors wrongfully withheld key information about Health Net liabilities and misstated those liabilities in order to deceive Centene's shareholders and the market. In order words, any progress Plaintiffs might make in prosecuting this Derivative Action may then be used by the plaintiffs in the Securities Action to attempt to establish Centene's liability in the Securities Action. See Cucci v. Edwards, 2007 WL 3396234, at *2 (C.D. Cal. Oct. 31, 2007) ("[P]rosecution of the . . . Derivative Action would likely conflict with [the company's] defense of the Securities Class Action, since the shareholder derivative Plaintiffs would need to prove allegations that would seriously undermine [the company's] defense of the class action."); Rosenblum ex rel. Amgen, Inc. v. Sharer, 2008 WL 9396534, at *8 (C.D. Cal. July 28, 2008) (same).

This inherent conflict may manifest in many ways during litigation. For example,

Company witnesses may be put in the compromised position of giving testimony on Centene's behalf in this Derivative Action that potentially undermines its position in the Securities Action, or vice versa. See STEC, 2012 WL 8978155, at *6 n.6 (staying derivative suit because "evidence could surface in depositions . . . which could also be used to undermine [the company's] defense" in the securities action). Indeed, the Plaintiffs in this Action, purportedly working on behalf of  Centene, "must attempt to undermine [the] credibility [of those witnesses] while [Centene] presumably will attempt to rely on their veracity" for purposes of the Securities Action. Brenner v. Albrecht, 2012 WL 252286, at *6 (Del. Ch. Jan. 27, 2012).

Such results would be particularly unfair because, by bringing this Action without making a prior demand on Centene's board, Plaintiffs deprived Centene and its management of the opportunity to make the perfectly rational decision to forgo additional litigation while the Securities Action is ongoing. See In re E.F. Hutton Banking Practices Litig., 634 F. Supp. 265, 270 (S.D.N.Y. 1986) ("It seems obvious that . . . a disinterested board" faced with ongoing litigation "might well . . . conclude it to be unwise to subject them[selves] to further litigation clearly calculated to undercut their veracity and general effectiveness as witnesses."). Instead, Plaintiffs have created a situation where "two actors—[Plaintiffs] and [Centene's] board" are "pursu[ing] divergent strategies in two simultaneous actions on behalf of the same entity." Brenner, 2012 WL 252286, at *5. Thus a stay is necessary to "minimize these risks of prejudice to [Centene's] defense of the Securities Class Action." Id. at *6.

Additionally, simultaneous litigation may unfairly prejudice Centene in another way—by forcing its management to divide their attentions between defending Centene in the Securities Action, and defending themselves in this Action. Centene's interests are better served by having its key decision-makers solely focused on presenting a robust coordinated defense in the

Securities Action. Courts routinely find this potential harm warrants a stay. See, e.g., McDonald, 2018 WL 692006, at *2 ("A stay [of a derivative suit] may be granted if . . . a corporation's resources could be better used defending the securities action."); Cucci, 2007 WL 3396234, at *2 ("At this early stage of the [derivative] litigation, it seems sensible for the company . . . to devote its resources at this time exclusively to the Securities Class Action.").

**B.      A Stay Is Necessary To Avoid Duplicative Litigation, Wasting Judicial Resources And Inconsistent Rulings**

Courts also stay follow-on derivative suits during the pendency of related securities class actions in order to "promote judicial economy and fairness," avoid "conflicting and duplicative litigation" and preserve "[c]ourt harmony and uniformity." See McDonald, 2018 WL 692006, at *2; Brudno v. Wise, 2003 WL 1874750, at *4 (Del. Ch. Apr. 1, 2003) (staying suit because it is "unduly complicated, inefficient, and unnecessary for this [derivative] Action to proceed ahead or apace of the Federal Securities Action"); see also Miller v. Bayer HealthCare Pharm. Inc., 2015 WL 5572801, at *1 (E.D. Mo. Sept. 22, 2015) (Perry, J.) (granting stay where it "will allow consistent pretrial rulings and conserve the resources of the parties, counsel, and the judiciary").

Courts have identified three efficiency interests that are served by staying derivative actions until related securities actions have concluded: First, a stay prevents wasteful duplicative litigation and discovery over the same core factual allegations. See McDonald, 2018 WL 692006, at *2. Second, when the plaintiffs' claims in the derivative suit are at least partially contingent on the outcome of the securities suit, as is the case here, waiting until the securities suit is resolved can substantially simplify the issues in the derivative suit. See Brenner, 2012 WL 252286, at *6 (because derivative action "cannot be adjudicated in full (or even in large measure) until the Securities Class Action is tried, the sensible ordering of events is for the Securities Class Action to proceed first" (brackets and ellipses omitted)). Finally, a stay ameliorates the

potential for conflicting rulings and findings in the two Actions, thus promoting judicial comity. See STEC, 2012 WL 8978155, at *8. All three rationales apply here and warrant a stay.

### 1. The Parties, Issues And Key Allegations Are The Same In Both Suits

Courts regularly stay derivative actions in favor of securities actions arising from similar issues and allegations because doing so preserves "judicial resources and reduce[s] the litigation burden on the parties and the court." Groupon, 882 F. Supp. 2d at  1051. This benefit is particularly significant where, as here, the "derivative litigation is in its infancy, and the Court has not yet directed its scarce resources to the merits of this dispute." Janklow ex rel. Stericycle, Inc. v. Alutto, 2018 WL 6499869, at *2 (D. Del. Dec. 11, 2018).

In light of the significant factual and issue overlap between the two Actions, it would be wasteful and needlessly expensive to litigate both suits simultaneously. Both this Derivative Action and the Securities Action involve Centene shareholders asserting claims against Mr. Neidorff and Mr. Schwaneke, who, along with Centene, are parties to both suits. Plaintiffs' central allegation in both cases is that Centene and its management wrongfully concealed known Health Net liabilities. (See Compl. ¶¶ 3–4, 101–40; Ex. A ¶¶ 1–6, 81–110); see also Ormat, 2011 WL 3841089, at *5 (staying derivative action in favor of securities class action where "both lawsuits are based on Defendants' accounting practices and public financial statements during 2008 and 2009"). Thus, the plaintiffs in both suits will likely rely on largely the same statements and documents to support their claims.[3] See Groupon, 882 F. Supp. 2d at 1050 (stay warranted where "both sets of plaintiffs rely on the same documents to support their claims," including SEC filings). Equally so, both cases may rely on testimony from the same individuals, such as Mr. Neidorff, Mr. Schwaneke and other Centene directors and officers who may have been

---

[3]   (Compare Compl. ¶¶ 47, 59, 69–70, 73, 75–76, 101, 104, 106, 108–13, 125–40, with Ex. A ¶¶ 24, 28–30, 36, 38–39, 49, 51–52, 54–56, 58–60, 63, 65–80.)

involved in the accounting of Health Net liabilities and/or preparation of public statements discussing those liabilities. See id. at 1051 (stay warranted where "both sets of plaintiffs will rely on similar witnesses as the individual defendants' testimony will be necessary to establish the relevant facts in both cases"). Litigating this subject matter twice will only waste resources, mitigating any benefit Plaintiffs allege this Action will provide Centene.

It does not matter that the Derivative Action contains some issues and parties not present in the Securities Action. Courts do "not require that the parties and the claims be identical" before a stay may issue. STEC, 2012 WL 8978155, at *6. It suffices "that both actions rest on the same or closely related transactions, happenings or events, and thus will call for the determination of the same or substantially related questions of fact." Cucci, 2007 WL 3396234, at *2; Groupon, 882 F. Supp. 2d at 1050 (rejecting "plaintiff's attempt to distinguish the operative facts" where "a review of the complaints demonstrates" similar facts). That is the case here, where most of the differences in the Actions "arise from the nature of the actions—class and derivative—not relevant differences in fact." STEC, 2012 WL 8978155, at *6.

### 2. Plaintiffs' Claims Are Largely Contingent On The Outcome Of The Securities Action

Similarly, the Court should stay this Action because a significant chunk of Plaintiffs' allegations in this Action would be rendered moot if Judge Fleissig grants the pending motion to dismiss the Securities Action, or if the Securities Action is otherwise eventually resolved in Centene's favor. See Brudno, 2003 WL 1874750, at *4 (staying derivative action where "if the Federal Securities Action were to lead in the exoneration of El Paso and the other defendants . . . it is not apparent what, if anything, would be left of this Action").

Plaintiffs' primary theory of liability—that Centene's directors and officers violated their fiduciary duties by exposing the Company to liability in the *Securities Action* (see Compl. ¶¶

84–88, 100–14, 125–40, 212–15)—is contingent upon the outcome of the Securities Action. Thus, the bulk of this Derivative Action is akin to a "placeholder indemnity action filed on [Centene's] behalf," Brudno, 2003 WL 1874750, at *1, and would naturally drop out of the case if the Securities Action were dismissed, leaving only peripheral issues like Health Net's potential tax and false claims liabilities that amount to a handful of allegations in the 225-allegation Complaint. (See Compl. ¶¶ 115-124.) In such situations, courts routinely hold that waiting for the Securities Action to finish is the more efficient course and may lead to a prompt and inexpensive resolution of the derivative action. See Brudno, 2003 WL 1874750, at *1 (when derivative action is akin to an "indemnity action filed on [the company's] behalf" it "makes little sense for this [derivative action] to proceed until the bases for the plaintiffs' indemnity claims are settled"); First Solar, 2012 WL 6570914, at *2 (resolution of the class action may "lead to prompt resolution of the derivative action, saving litigation costs and court resources").

Even if the motion to dismiss in the Securities Action is not granted, the Securities Action may address several issues in this Derivative Action—such as whether Centene officers intentionally concealed material information from the public—and thereby simplify litigation when the stay is lifted. See Groupon, 882 F. Supp. 2d at 1049 (stay appropriate where a "resolution of the class claims would significantly simplify the central issue in the derivative case, i.e., the scope of the individual defendants' liability").

Once again, it does not matter that the Securities Action will not resolve all of the issues in the Derivative Action. Courts have concluded that even when "the relief [the plaintiff] seeks is only partially contingent on the outcome of the Securities Class Action, 'it is difficult to fault the idea that the primary liability case [i.e., the Securities Class Action] should go forward before the case seeking indemnity, when the indemnity case's outcome necessarily depends on the outcome

13

of the [Securities Class Action].'" <u>Brenner</u>, 2012 WL 252286, at *6 (alterations in original) (quoting <u>Brudno</u>, 2003 WL 1874750, at *4); <u>Groupon</u>, 882 F. Supp. 2d at 1049 (granting stay even though some derivative claims would not be resolved by securities class action).

### 3.    A Stay Would Prevent Inconsistent Rulings

A stay should also be granted to prevent the unseemly prospect of generating inconsistent judgments. As this Court has observed in a related context, litigating two concurrent lawsuits over the same subject matter creates a "risk that the two different courts could duplicate their efforts and reach different results." <u>Liberty Mut.</u>, 2018 WL 4095186, at *4 (Perry, J.); <u>Nabholz Constr. Corp. v. Beck</u>, 699 F. Supp. 2d 1101, 1107 (E.D. Mo. 2010) (Perry, J.) (same).

Accordingly, courts regularly stay follow-on derivative actions in order to obviate this risk, promote the orderly course of justice and avoid prejudicing the company by subjecting it to conflicting judgments. <u>See</u> <u>STEC</u>, 2012 WL 8978155, at *8 ("stay promotes the orderly course of justice because it obviates the possibility of a conflict of rulings in the Federal Securities Class Action and [the derivative] action"); <u>McDonald</u>, 2018 WL 692006, at *2 ("Court harmony and uniformity yield less prejudice than conflicting and duplicative litigation may cause.").

Here, given the significant overlap in factual allegations and legal issues between the Actions, litigating both simultaneously raises the possibility of conflicting judicial rulings and jury findings. For instance, the elements of Plaintiffs' *Brophy* insider trading claims in this Action (<u>see</u> Compl. ¶¶ 216–20) "more or less track the key requirements to recover against an insider under federal law," <u>Oracle</u>, 867 A.2d at 934; thus, in order to survive the pleading stage, Plaintiffs in this Action and the plaintiffs in the Securities Action both need to plead with particularity that the Company's officers possessed material nonpublic information concerning Health Net's liabilities and acted with scienter. <u>See</u> <u>Guttman v. Huang</u>, 823 A.2d 492, 505 (Del.

Ch. 2003). The pending motion to dismiss in the Securities Action argues that the complaint fails to do just that. Accordingly, it is possible that Judge Fleissig could determine the Securities Action fails to plead material misstatements made with scienter, while this Court determines that *the exact same* subject matter is actionable—with Centene caught in the middle of these conflicting rulings. This potential for conflicting findings and rulings would only persist if both Actions proceed past the pleading stage, because "[t]wo juries, considering the same evidence and hearing testimony could reach opposite or conflicting results" on whether Centene's officers concealed material nonpublic information with the requisite state of mind. See STEC, 2012 WL 8978155, at *8. Thus, a stay is necessary to avoid this unseemly prospect and maintain comity and harmony within this District. See Miller, 2015 WL 5572801, at *1.

### C.       **Plaintiffs Will Not Suffer Prejudice From A Stay**

In contrast to the significant prejudice Centene may incur if this Action and the Securities Action were litigated simultaneously, a stay will not prejudice Plaintiffs. Because this Action is brought on Centene's behalf, Plaintiffs are not the real parties at interest; their concerns are accordingly secondary to Centene's interests. See Cohen, 337 U.S. at 549.

In any event, a stay will actually *benefit*, rather than prejudice, Plaintiffs and their counsel. This Action is still in its infancy, before the parties have even expended time and resources litigating the merits of the pleadings. Thus, Plaintiffs have not invested significantly in this litigation, and if Centene and its officers ultimately have no securities liability, Plaintiffs and their counsel will not have wasted time and money arguing otherwise here.

### IV.    **CONCLUSION**

For the foregoing reasons, Centene respectfully requests that the Court stay this Derivative Action in its entirety pending resolution of the Securities Action.

Dated:  February 22, 2019          Respectfully submitted,

                                   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                                   By: _____*/s/ Peter B. Morrison*_____
                                   Peter B. Morrison
                                   (*pro hac vice* – E.D. Mo. Bar No. 510044)
                                   Winston P. Hsiao
                                   (*pro hac vice* – E.D. Mo. Bar No. 273638CA)
                                   300 South Grand Avenue, Suite 3400
                                   Los Angeles, CA 90071
                                   Tel: (213) 687-5000
                                   Fax: (213) 687-5600
                                   peter.morrison@skadden.com
                                   winston.hsiao@skadden.com

                                   Jay B. Kasner (*pro hac vice* application forthcoming)
                                   Scott D. Musoff (*pro hac vice* application forthcoming)
                                   SKADDEN, ARPS, SLATE,
                                     MEAGHER & FLOM LLP
                                   Four Times Square
                                   New York, NY 10036
                                   Tel: (212) 735-3000
                                   Fax: (212) 735-2000
                                   jay.kasner@skadden.com
                                   scott.musoff@skadden.com

                                   Joseph P. Conran
                                   Christopher A. Smith
                                   HUSCH BLACKWELL LLP
                                   190 Carondelet Plaza, Suite 600
                                   St. Louis, MO 63105
                                   Tel: (314) 480-1500
                                   Fax: (314) 480-1505
                                   joe.conran@huschblackwell.com
                                   chris.smith@huschblackwell.com
                                   *Attorneys for Nominal Defendant Centene Corporation*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 22nd day of February, 2019, a copy of the foregoing document was filed with the Clerk of the Court to be served upon counsel of record via the Court's ECF system.

*/s/ Peter B. Morrison*
